[No. 19408.    Department Two.    January 21, 1926.]

T. PAPPADAKIS, *sole trader, doing business under the name and style of Athenian Confectionery & Bakery, Respondent,* v. NETHERLANDS FIRE & LIFE INSURANCE COMPANY *et al., Appellants.*[1]

[1] INSURANCE (49-1, 119)—AGAINST FIRE—DESCRIPTION OF RISK— "HOSTILE FIRE"—PROXIMATE CAUSE OF LOSS. There was a "hostile fire," within the terms of a fire insurance policy, warranting recovery for the loss, where fire escaped from a crack in the top of a bakery oven, until the flame heated an automatic sprinkler head, releasing and throwing a large quantity of water over the bakery and damaging the bakery and stock therein.

[2] INSURANCE (136)—AGAINST FIRE—PROOF OF LOSS—ESTOPPEL AS TO DEFECTS AND OBJECTIONS. The denial of all liability for a fire loss precludes the company from contesting the claim on the ground that the insured failed to give a reasonable opportunity to ascertain the amount of the loss.

Appeal from a judgment of the superior court for King county, Charles E. Claypool, judge *pro tempore,* entered February 19, 1925, upon findings in favor of plaintiffs, in an action upon a policy of fire insurance, tried to the court. Affirmed.

*Fred G. Clarke,* for appellants.
*Paul Carrigan,* for respondent.

[1]Reported in 242 Pac. 641.

MAIN, J.—This action is based upon fire insurance policies issued by the defendants. The cause was tried to the court without a jury and resulted in findings of fact, conclusions of law and a judgment sustaining a recovery in the sum of $600. From this judgment, the defendants appeal.

The respondent, under the name of the Athenian Confectionery & Bakery, operated a bakery in Pike Place Market, in the city of Seattle. Upon his fixtures and stock of supplies, the appellants had issued fire insurance policies, each of which provided "against all direct loss or damage by fire." In Pike Place Market, there had been installed a sprinkler system, intended for the purpose of extinguishing fires, should any occur. One of the sprinkler heads was directly above a bake oven in the respondent's bakery. In the top of this oven, there was a crack. On October 5, 1923, flame from the fire in the oven escaped upwards through this crack, heated the automatic sprinkler head to such a temperature that the sprinkler was released and threw a large quantity of water over the bakery and the stock therein. The appellants denied liability, claiming that the loss was caused by the sprinkler and was not due to fire, in other words, that it was not within the terms of the policies.

Upon the question as to whether there was a crack in the top of the oven and the fire escaped through it, extended upwards and heated the sprinkler head so that it opened, the evidence is in dispute. The trial court found this to be the fact, and under the evidence this finding must be sustained. The question then is, since there was no ignition or charring or burning outside of the oven, was this a fire loss. It is a rule supported by the authorities that, where the fire does not escape from its proper place, that is, where it was in-

tended to be, and there is no ignition or charring of wood by reason of the heat, there cannot be a recovery for such damages as may result from soot or smoke. The Law of Insurance, Joyce, (2d ed.) vol. 4, § 2796. *Cannon v. Phoenix Insurance Co.*, 110 Ga. 563, 35 S. E. 775; *Fitzgerald v. German-American Ins. Co.*, 30 Misc. Rep. 72, 62 N. Y. Supp. 824. Upon that proposition there seems to be no dispute.

[1] In the present case, however, the facts do not bring it within the rule. Here the fire did escape from its accustomed place and where it was intended to be, heated a sprinkler head and the damage resulted. The precise question is whether, under such facts, there was a fire loss or, as it is sometimes referred to, a hostile fire. In 26 C. J. p. 340, it is said:

"It must be a hostile fire, that is one which becomes uncontrollable or breaks out from where it was intended to be, and becomes a hostile element, and where there is such a fire, recovery may be had for resulting losses or damages in regard to which there has been no actual ignition, such as a loss or damage caused by smoke and soot, or by heat."

In *Way v. Abington Mutual Fire Insurance Co.*, 166 Mass. 67, 43 N. E. 67 it was held that, where a fire was lighted in a stove by the occupant of the room for the purpose of his business and ignited the soot accumulated in the chimney into which the pipe of the stove entered, and the chimney became obstructed by the falling of the lining and scales of soot, causing the smoke from the burning soot to escape into the room and damage the property, such damage was covered by an insurance policy which provided against loss or damage by fire. The reason for the holding was that the fire, when it escaped into the chimney, was not in the place where it was intended to be and therefore was a hostile fire. Whether, if the immediate question were before

us, we would be inclined to the view that a fire in a chimney is out of the place where it is intended to be will not here be determined. The case is cited for the purpose of showing the position of the court upon the question as to the rule to be applied when the fire is out of place.

In *Cabbell v. Milwaukee Mechanics' Ins. Co.*, 260 S. W. (Mo. App.) 490, a furnace in the basement of a dwelling exploded and threw out upon the basement floor live chunks of coal and it was there held that the live coals, thus thrown from the furnace, would constitute actual ignition outside of the furnace so as to come within the terms of the rule stated in the excerpt quoted from Corpus Juris above. In the present case, there was not soot or smoke which caused damage from the fire which was out of place, but that fire heated the sprinkler head and the damage resulted. If a fire out of place which causes damage by soot or smoke is a hostile fire, there does not seem to be any reason why a fire out of place, which does not produce soot or smoke but operates by the heat applied to release another agency which produced the damage, should not also be held to be a hostile fire.

In Wood on Insurance, vol. 1, § 103, after stating the rule that there can be no recovery, so long as the fire itself is confined within the limits of the agency employed, from the effects of smoke or heat, it is said:

"In order to bring such consequences within the risk, there must be actual ignition outside of the agencies employed, not purposely caused by the assured, and these, as a consequence of such ignition, dehors the agencies."

The first impression from this would seem to be that there could be no recovery unless there was actual ignition in any case, but the author was there considering the rule when the fire itself was confined within the

limits of the agencies employed, and this would be in harmony with the rule first above stated. This is made apparent when the only case cited by the writer, that of *Austin v. Drew,* 4 Campb. 360, in its support is examined. In that case there was a building seven or eight stories high. On the ground floor a stove was used for heating purposes. From the stove a chimney or flue went to the top of the building, and, as it passed each floor, there was a register in it with an aperture into the rooms, whereby more or less heat might be introduced at pleasure. One morning, the fire being lighted in the stove as usual, the one whose duty it was to open the register in the highest story forgot to do so. The result was that the smoke, sparks and heat were completely intercepted in their progress through the flue and were forced into the room where sugars were drying, and the damage resulted for which recovery was sought. When the register was opened the mischief was remedied. The fire did not escape from the stove. The damage was produced by the soot and smoke. It was held that there could be no recovery. In that case the fire itself was confined within the limit of the agency employed, to-wit, the stove. In the present case, as seen, the fire was not confined to the place where it was intended to be but escaped through the crack in the top of the oven and extended upwards, producing the result mentioned.

Since the damage in the case now before us was caused by a fire out of place, it follows that it was a hostile fire and one that brought the loss within the terms of the policies.

The appellants object to the amount of the damage allowed by the trial court. But if liability exists, as we have found, the evidence is ample to sustain a recovery in the amount fixed in the judgment.

[2] It is also contended that the respondent cleared up his bakery, and dumped the refuse either into the garbage can or the sink before the appellants' representative had a reasonable opportunity to examine the same and ascertain the loss, as it was provided in the policies that they should have. The damage occurred on Friday evening at about five o'clock. The next morning the agent of the insurance companies was notified and asked to send an adjuster. No adjuster appeared until Tuesday or Wednesday of the following week. In the meantime the respondent had disposed of the damaged flour, sugar, etc. Whether, under the particular facts, the respondent should have waited longer before disposing of the damaged articles, it is not necessary here to determine, because when the adjuster visited the premises he repudiated the loss as one not within the policies, and stated that he had no occasion to see the respondent who was not at the time in the bakery. Having thus denied liability under the policies, the appellants are not now in a position to complain of the action of the respondent. In vol. 5, Joyce, The Law of Insurance, (2d ed.), § 3373, it is said:

"A denial by the insurer of all liability under the policy will operate as a waiver of the provision requiring notice and proofs of loss, or of any defects in notice of proofs."

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, and PARKER, JJ., concur.